LUDWICK, EXECUTOR OF ESTATE OF HOBBS, DECEASED ET AL. *v.* BANET ET AL.

[No. 18,579. Filed February 10, 1955. Rehearing denied March 25, 1955. Transfer denied May 27, 1955.]

*Ray McAdams, Hermann F. Busse* and *James P. Murphy*, of Fort Wayne, for appellant.

*Hayes & Hayes*, of Fort Wayne, for appellees.

PFAFF, J.—The appellee, Richard Banet, brought this action to contest the Will of his mother, Mildred M. Hobbs, deceased. His complaint alleged that the Will was invalid for the reason that the testatrix, Mildred M. Hobbs, did not have the necessary testamentary capacity; that the Will was obtained under undue

influence; and that the Will of the testatrix was unduly executed.

The appellant, James K. Ludwick, and the appellee, Richard Banet, were half-brothers and the sons of Mildred M. Hobbs. Richard Banet was born to Mildred M. Hobbs out of wedlock, and was adopted when he was a small boy by Frank and Ina Banet.

The evidence discloses that Richard Banet met his mother for the first time either the last day of March or the first day of April, 1952. The decedent, Mildred M. Hobbs, married one Ludwick in the year of 1913 and separated in July of 1914. The appellant, James Ludwick, was born out of this marriage the 25th day of January, 1915. The appellant lived with his grandparents until he was about seventeen years of age, after which time he lived with his mother, Mildred M. Hobbs, for a short period of time. Later the decedent married one Hobbs who died in 1946. During all her lifetime, Mildred M. Hobbs was steadily employed. The last years of her life she was suffering from an incurable disease which necessitated four operations. She died April 28, 1953, leaving a Last Will and Testament dated February 14, 1953. The Will was admitted to probate May 1, 1953.

The cause was submitted to a jury. The jury entered the following verdict:

"We, the Jury, find for the plaintiff: that the instrument of writing probated as the Last Will and Testament of Mildred M. Hobbs, deceased, is invalid; that it is not her last will and testament and its probate should be set aside."

Judgment was entered accordingly.

The sole error relied upon for reversal is the overruling of appellants' motion for new trial, which is as follows:

"Comes now the defendant in the action above captioned and moves the court to grant a new trial of this cause for the following reasons:

"(1) The verdict of the jury is not sustained by sufficient evidence.

"(2) The verdict of the jury is contrary to law.

"(3) Error of law occurring at the trial in this: The court erred in giving and reading to the jury, over the written objection of the defendant, plaintiff's instruction No. 9.

"Wherefore, defendant prays that he be granted a new trial herein."

The record discloses that plaintiff tendered instructions numbered 1 to 7, inclusive. We do not find any place in the transcript or briefs where plaintiff's instruction No. 9 is set out. Therefore, we do not deem it necessary to give this further consideration. Rule 2-17 (f). *Quail* v. *Banta* (1943), 113 Ind. App. 664, 48 N. E. 2d 841.

It is a well-recognized rule that if there is any evidence of probative value to support the verdict, it would be our duty to affirm. After a careful examination of the evidence in the record most favorable to the appellee, we are of the opinion there is no substantive evidence of probative value to sustain the verdict of the jury that the Will was invalid because the testatrix did not have the necessary testamentary capacity, or that she was unduly influenced, or that the Will was unduly executed. *Noyer* v. *Ecker* (1954), 125 Ind. App. 63, 119 N. E. 2d 902; *Daugherty* v. *Daugherty* (1945), 115 Ind. App. 253, 57 N. E. 2d 599; *Quail* v. *Banta, supra; Wersich* v. *Phelps* (1917), 186 Ind. 290, 116 N. E. 49. The record discloses that a doctor and a relative of the testatrix testified that in their opinion she was of sound mind. This evidence

was uncontradicted. We find no evidence in the record herein that she did not have testamentary capacity.

The real issue in this case is whether or not the undue influence alleged to have been practiced by the appellant, James K. Ludwick, on his mother, Mildred M. Hobbs, was at a time she was under the influence of drugs and opiates to the extent that the Will was not her voluntary act and deed. There is a complete lack of evidence to sustain the verdict of the jury that the execution of the Last Will and Testament of Mildred M. Hobbs was not her voluntary act or deed, or that she was in anywise induced by unlawful means or undue influence to make the Will in question.

> "Undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it is made. It must be of such compelling force that it expresses only the mastering desire of another and not that of the person who merely consents to affix his name to the instrument. *Goodbar* v. *Lidikey* (1893), 136 Ind. 1, 35 N. E. 691, 43 Am. St. Rep. 296; *Slayback* v. *Witt* (1898), 151 Ind. 376, 391, 50 N. E. 27; *Ditton* v. *Hart* (1911), 175 Ind. 585, 95 N. E. 119; *Wiley* v. *Gordan* (1914), 181 Ind. 252, 267, 104 N. E. 500; *Barr* v. *Sumner* (1915), 183 Ind. 402, 423, 107 N. E. 675, 109 N. E. 193." *Deery* v. *Hall* (1933), 96 Ind. App. 683, 175 N. E. 141.

We find no statement in the record that supports the contention of appellee that appellant dictated or wrote the Will of Mildred M. Hobbs, or procured it to be written, or participated in or had anything to do with dictating the provisions thereof. *Willett* v. *Hall* (1942), 220 Ind. 310, 41 N. E. 2d 619.

On the question of undue execution the record discloses that the Will in question was duly admitted to

probate. This placed the burden of proving undue execution on the appellee, Richard Banet. The only evidence bearing on the question of undue execution that we find in the record is the statement of Lawrence A. Lord, one of the subscribing witnesses, to the effect that "Mildred's signature was on the Will when I signed it. I did not see her sign it." Admitting this to be true, as we must, the Will could have been duly executed nevertheless if the testatrix had then acknowledged the signature appearing on the Will as her own. The appellee, Richard Banet, who had the burden, failed to prove lack of acknowledgment. In other words, he failed to prove an essential element of his case based on undue execution. Had the case been tried on objections to probate the burden would have been on the appellants and the silence of the record as to acknowledgment would have been fatal to their case.

Judgment reversed and cause remanded with instructions to grant appellants' motion for new trial.

Kelley, C. J. dissents with opinion to follow.

Bowen, J., concurs with dissent.

### DISSENTING OPINION

KELLEY, C. J., dissenting and BOWEN, J., concurs in dissent.—The majority opinion impresses me that on at least one of the issues, evidence has been weighed, the province of the jury has been invaded, and that not all legitimate means to uphold the verdict have been resorted to. It is our duty, as has been many times declared, to sustain the verdict of the jury or the finding of the trial court where there is any substantive evidence of probative value in its support, including reasonable inferences the jury is authorized to draw from the evidence.

One of the charges made in appellee's complaint is that the Will referred to in the majority opinion was unduly executed. Such charge includes the manner of the execution of the Will and whether it was legally executed. The jury found that the Will "is invalid" and such was not the last Will and Testament of the decedent. The main opinion broadly holds that there was no evidence to sustain the verdict.

The matter which gives rise to my disagreement with the prevailing opinion is this: The appellants, as defendants below, put on the stand as witnesses, apparently to show the valid execution of the Will, the two subscribing witnesses thereto. One was Lawrence Lord, apparently a neighbor of the decedent, and the other Herman N. Busse, an attorney.

Busse testified that decedent signed the Will in the presence of both subscribing witnesses. Lord testified, on pertinent matters, on direct examination in this fashion:

. . .

Q. Who was present when this will was signed?

A. You (Busse) and I and Mildred (decedent).

. . .

Q. Was she (decedent) asked whether any pressure was brought on her in any way by anybody to make that will?

A. I don't remember.

Q. Didn't I (Busse) ask her if this will was made the way she wanted it?

A. That's right, you did.

Q. After I asked Mildred Hobbs about the will, what did she say?

A. She said that's the way she wanted it.

Q. And did she thereafter sign the will?

A. I don't remember—I signed it, I know.

. . .

Q. Who signed the will first, do you remember?

A. I don't remember—I know I signed it.

. . .

Q. Did Mildred sign it first, if you know?

A. I don't remember these things—I didn't pay much attention to it.

Q. Was Mildred's signature on the will when you signed it?

A. Yes, it was there.

On cross-examination by appellee's attorney, Lord testified:

. . .

Q. You didn't see her (decedent) sign it?

A. No.

There was no further evidence by either party as to her signature or whether she acknowledged to Lord that the signature on the Will was her signature.

It definitely appearing from Lord's testimony that the Will was not signed in his presence by the testatrix, it seems to me, from the holdings of our court that where the due execution of the Will is contested, it became necessary, for a valid execution of the Will, that it be established by the evidence that testatrix requested said witness to sign said Will as a subscribing witness and *that she acknowledged to him that the signature on the Will was her signature. Reed et al.* v. *Watson et al.* (1867), 27 Ind. 443; *Wersich* v. *Phelps* (1917), 186 Ind. 290, 116 N. E. 49.

The main opinion impliedly admits that such acknowledgment is an essential element but asserts, in avoidance thereof, that "the Will could have been duly acknowledged nevertheless *if* the testatrix had then acknowledged the signature . . . as her own," and then adds: "The appellee Richard Banet, who had the bur-

den, *failed to prove lack of acknowledgment.*" Such statement points up the ground upon which I am not in accord. If, by such holding, it is meant that there is no direct evidence in the record showing the acknowledgment by the testatrix of her signature, I would find room for agreement. But if such statement means that the jury could not infer such want of acknowledgment from all the attending circumstances disclosed by the record, I must disagree. The prevailing opinion seems to go off more on the question as to who held the burden of proof than it does on the question I believe most vital, namely: was there any evidence, or inference, to support the verdict of the jury.

It may be conceded that, as this was a proceeding to contest the Will instituted subsequent to the probate of the Will, the burden was on the appellee to prove the material allegations of his complaint. *Pence v. Myers* (1913), 180 Ind. 282, 101 N. E. 716. Under the allegations of the complaint, as a matter of pleading, it devolved upon appellee to prove a negative. To say that the Will was unduly executed involves a negative that the Will was not executed according to accepted legal requirements.

In the case of *Goodwin v. Smith et al.* (1880), 72 Ind. 113, 117, a landmark case, Judge Elliott stated thusly: ". . . it will be found upon examination, that, wherever the question has been directly presented and considered with care, it has been uniformly held, that, wherever the petitioner's rights depend upon the truth of a negative, upon him is cast the *onus probandi, except in cases where the matter is peculiarly within the knowledge of the adverse party.*" (My emphasis.) In *United States v. Denver & Rio Grande Railroad Company* (1903), 191 U. S. 84, 91, 92, 48 L. Ed. 106, the court elaborates on the rule pertaining to the proof of a

negative, saying that it is not a question of pleading, but of the order of proof, and quoting from 1 Greenl. Ev., §79, to the effect that "where the subject-matter of the negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party." To the same effect see *Bell v. State* (1911), 62 Tex. Crim. Rep. 242, 137 S. W. 670.

The details of the execution of this Will were certainly a matter within the peculiar knowledge of the aforesaid subscribing witnesses, who were placed on the stand by appellants, as their witnesses. The evidence, as quoted above, is positive that the only persons present at the attempted execution of the Will were the testatrix and the two subscribing witnesses. Under the evidence, no one else would have had any personal knowledge of what transpired. That appellants recognized the fact of their peculiar knowledge and concluded therefrom that, under the exceptions stated in the Goodwin case, they should undertake the proof of the due execution of the will, is the only logical explanation for their so doing. Aside from the force of the execution, they were under no duty to offer to prove such facts.

From appellants' subscribing witness, Lord, the appellee, on cross-examination, elicited the fact that the Will was not signed in the presence of said witness. At that point of the trial, there appeared before the jury a conflict between the witness Lord and Busse as to just what did happen on the occasion of the gathering for the Will ceremony, a conflict as to when the Will was actually signed by the testatrix, and a conflict as to whether it was signed in the presence of the witness, Lord. The jury had the right to believe Lord and disbelieve Busse. Its verdict indicates that it believed the

former. The jury had the right, also, to infer that if appellants possessed any evidence that testatrix acknowledged her signature, they would have submitted it. Where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation the jury may draw an inference that such evidence would be unfavorable to him. 20 Am. Jur., Evidence §183, pp. 188, 189, Note 3. See, also, *The Lebanon Light, Heat and Power Company et al.* v. *Leap* (1894), 139 Ind. 443, 453, 39 N. E. 57.

But it is said, that appellee was required to go further and prove by direct evidence that the testatrix did not acknowledge to Lord that the signature appearing on the Will was her signature. With this I cannot agree because (1) appellants had voluntarily undertaken the proof of the due execution of the Will and, having accepted and proceeded with said burden, it is assumed they put in all the evidence they had on the question; (2) whether the acknowledgment was ever made was a fact not only peculiarly but solely within the knowledge of appellants' subscribing witnesses and, under the rule quoted above, appellee was not required to prove a negative which rested only in the knowledge of his adversaries; (3) when the fact appeared from appellants' witness that the Will was not signed in his presence, there arose, in effect, a *prima facie* case of undue execution, favorable to appellee, and the burden of the evidence to meet or overcome such *prima facie* showing by establishment of testatrix' acknowledgement continued with the appellants. Slight evidence may be sufficient to shift the duty of going forward with the evidence as to a particular fact from plaintiff to defendant, where such fact is peculiarly within the knowledge

of the defendant and would ordinarily be difficult for the plaintiff to prove. 20 Am. Jur., Evidence, §132, Note 7, p. 135.

The record of the probate of the Will lends no support to appellants' cause for such record only goes to the effect that the Will had been properly probated and entered of record, and could not be considered by the jury as establishing the due execution of the will. *Summers* v. *Copeland et al.* (1890), 125 Ind. 466, 471, 25 N. E. 555.

I cannot avoid the impression that the majority opinion rests upon the proposition that as there is no direct evidence in the record showing that the testatrix did not acknowledge her signature to the witness Lord, the verdict of the jury is contrary to law as being unsupported by any evidence. However, as previously stated, I think the evidence was conflicting as to the signing of the will; that the duty of going forward with the evidence, under the authorities referred to above, was upon the appellant to show the acknowledgment by the testatrix of her signature, if, in fact, she ever made such acknowledgment; that the facts were within the peculiar knowledge of appellants' witnesses, and that the failure of the appellants to produce the evidence within their control, authorized the jury to draw an inference that such evidence would be unfavorable to appellants.

The question of whether a will was executed or attested as required by law is a question of fact for the jury, *Potts et al.* v. *Felton et al.* (1880), 70 Ind. 166, 170, and the credibility of the witnesses and the weight to be given particular testimony are also questions of fact for the jury. The *Cleveland, Cincinnati, Chicago and St. Louis Railway Company* v. *Christie* (1912), 178 Ind. 691, 700, 100 N. E. 299. We cannot weigh the

testimony of one witness against the conflicting testimony of another, nor weigh the conflicting portions of the testimony of the same witness. *Hummel* v. *New York Central R. Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901; *Lincoln National Bank & Trust Co. of Fort Wayne* v. *Parker* (1941), 110 Ind. App. 1, 34 N. E. 2d 190. Further, the general verdict settles all conflicts of evidence in plaintiff's favor, *Cleveland, Cincinnati, Chicago and St. Louis Railway Company* v. *Moore, by next friend* (1909), 45 Ind. App. 58, 60, 90 N. E. 93.

Inferences are not required to be based upon direct evidence, but may spring from circumstances surrounding an event. *Odd Fellows Cemetery of New Haven, Indiana* v. *Daniels* (1941), 109 Ind. App. 127, 131, 33 N. E. 2d 357. From the record in this appeal, it appears that there was exhibited before the jury the circumstances, relations, statements, and surroundings attendant at the session where an attempt was made to execute the will here in question, and I am of the opinion that the jury could infer from both the proven circumstances and the failure of the appellants to establish an acknowledgment by the testatrix of her signature that the Will was not executed or attested as required by law. Such inference was sufficient to support the verdict of the jury, since an ultimate fact may be established by inferences from direct or circumstantial evidence. *Prudential Insurance Company of America* v. *Van Wey et al.* (1945), 223 Ind. 198, 204, 59 N. E. 2d 721.

For the reasons given, I think the judgment should be affirmed.

Bowen, J., concurs in dissent.

NOTE.—Reported in 124 N. E. 2d 214.